# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| John Doe B, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>Chandler Unified School District, et al.,<br><br>    Defendants. | No. CV-18-01485-PHX-SRB<br><br>**ORDER** |

Plaintiffs brought this case alleging that school officials failed to prevent or address sexually abusive hazing practices by players on the Hamilton High School football team. At issue is Defendants Chandler Unified School District ("District"), Kenneth James, Shawn Rustad, Beth Rustad, Steven Belles, Kirsten Belles, Manuel Palomarez, and Stephanie Palomarez (collectively "Employees")'s Motion to Dismiss ("Mot.") (Doc. 40) Plaintiffs' federal claims under 42 U.S.C. § 1983 and Title IX. The Court heard oral argument on August 20, 2018.

**I.   BACKGROUND**

Plaintiffs include five minors ("Minor Plaintiffs")[1] and their parents or legal guardians.[2] (Doc. 44, Am. Compl. ¶¶ 5–11.) Minor Plaintiffs attended Hamilton High School, and played on the school's football team. (Am. Compl. ¶ 14.) They claim that, following their promotion to the varsity squad, they were subjected to "sexual, physical

---

[1] John Does A, C, E, G, and I.
[2] John Does B, D, F, H, and J.

and emotional abuse" at the hands of their new teammates[3] over the course of two school years. (Am. Compl. ¶¶ 39, 42.) Examples include penetrating players' buttocks with hands and objects, removing players' pants and underwear, and restraining players while imitating sexual acts on them. (*See* Am. Compl. ¶¶ 41(A)–(E).) Portions of these attacks were recorded and shared on social media. (Am. Compl. ¶¶ 41(C)–(D).) And on one occasion, an assistant coach witnessed a portion of an attack, but left without taking any action to stop it. (Am. Compl. ¶ 41(D).) All attacks occurred on the premises of the high school, both during and outside school hours. (Am. Compl. ¶ 40.)

Plaintiffs filed this case alleging four federal and six state-law claims. The present motion concerns the former. Plaintiffs raise three § 1983 claims alleging that Defendants violated Minor Plaintiffs' due process rights under the Fourteenth Amendment by failing to protect against or adequately respond to their teammates' abusive behavior. (*See* Am. Compl. ¶¶ 60–70 (Count I), 71–81 (Count II), 86–97 (Count IV).) Their remaining federal claim alleges that Defendants violated Title IX by creating a sexually hostile educational environment. (*See* Am. Compl. ¶¶ 82–85 (Count III).) The Court now considers Defendants' motion to dismiss each of them.

## II. LEGAL STANDARD & ANALYSIS

Rule 12(b)(6) dismissal for failure to state a claim can be based on either (1) the lack of a cognizable legal theory or (2) insufficient facts to support a cognizable legal claim. *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011), *cert. denied*, *Blasquez v. Salazar*, 565 U.S. 1261 (2012). In determining whether an asserted claim can be sustained, "[a]ll of the facts alleged in the complaint are presumed true, and the pleadings are construed in the light most favorable to the nonmoving party." *Bates v. Mortg. Elec. Registration Sys., Inc.*, 694 F.3d 1076, 1080 (9th Cir. 2012). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236

---

[3] John Does K, M, O, Q, S, U, W, Y, AA, and CC. (Am. Compl. ¶¶ 20–29.)

(1974)). Nevertheless, "for a complaint to survive a motion to dismiss, the nonconclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In other words, the complaint must contain enough factual content "to raise a reasonable expectation that discovery will reveal evidence" of the claim. *Twombly*, 550 U.S. at 556.

Defendants make two arguments in support of dismissal. First, Defendants argue that Plaintiffs' Fourteenth Amendment claims under § 1983 must be dismissed because they had no constitutional duty to protect Minor Plaintiffs against the private violence of their teammates. Second, they maintain that Plaintiffs fail to allege facts demonstrating that the hazing suffered by Minor Plaintiffs was carried out on the basis of sex as required by Title IX. The Court agrees that Plaintiffs' § 1983 claims warrant dismissal. The Title IX claim does not.

### A.  Section 1983 Claims (Counts I, II, & IV)

To state a § 1983 claim, a plaintiff must allege "(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a federal constitutional or statutory right." *Jensen v. City of Oxnard*, 145 F.3d 1078, 1082 (9th Cir. 1998) (quotations omitted). At issue here are three claims alleging that Defendants violated Minor Plaintiffs' rights under the Fourteenth Amendment by failing to protect them from sexually violent hazing by their teammates. (*See* Am. Compl. ¶¶ 60–70 (Count I), 71–81 (Count II), 86–97 (Count IV).) None alleges a constitutional violation.

"It is well established that the Constitution protects a citizen's liberty interest in her own bodily security." *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061 (9th Cir. 2006). At the same time, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney v. Winnebago Cty. Dep't of Soc. Serv.*, 489 U.S. 189, 197 (1989). This rule has two exceptions: "(1) when a special relationship exists between the plaintiff and the state (the

special-relationship exception) and (2) when the state affirmatively places the plaintiff in danger by acting with deliberate indifference to a known or obvious danger (the state-created danger exception)." *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 971–72 (9th Cir. 2011) (quotations and citations omitted). Plaintiffs rely on the second.

"The lynchpin of liability under the danger creation exception is proof that the defendant effectively prevented the plaintiff from protecting himself or prevented access to outside sources of help." *Morgan v. Bend-La Pine Sch. Dist.*, No. CV–07–173–ST, 2009 WL 312423, at *11 (D. Or. Feb. 6, 2009). The exception applies only where the state official "affirmatively created an actual, particularized danger" that would not have existed but for that official's affirmative act. *Kennedy*, 439 F.3d at 1063; *accord J.K. v. Ariz. Bd. of Regents*, No. CV 06–916–PHX–MHM, 2008 WL 4446712, at *5 (D. Ariz. Sept. 30, 2008) ("danger affirmatively created due to state action"). Courts have construed this exception quite narrowly. *See, e.g.*, *Samuelson v. Or. State Univ.*, 162 F. Supp. 3d 1123, 1135 (D. Or. 2016) ("This exception applies only in limited circumstances . . . ."); *see also Lamberth v. Clark Cty. Sch. Dist.*, 698 F. App'x 387, 388 (9th Cir. 2017) (finding exception inapplicable to complaints about inaction rather than affirmative conduct). Complaints must allege both affirmative conduct and deliberate indifference. *See Patel*, 648 F.3d at 974 (finding state-created danger exception requires satisfying these "two clear requirements"). Plaintiffs plead only the latter.

The Court begins by noting that Plaintiffs misstate the danger creation exception by excluding altogether its requirement that state officials be responsible for the danger's creation. (*See* Resp. at 3.) As a result, Plaintiffs simply address Defendants' alleged knowledge of, and resultant indifference to, the hazing perpetrated against Minor Plaintiffs. (*See* Resp. at 3–4.) The Court does not doubt—nor do Defendants question— the sufficiency of Plaintiffs' allegations on this point. But that is only half the analysis.

Affirmative conduct entails "not only that the defendant acted affirmatively, but also that the affirmative conduct placed [plaintiffs] in a worse position than that in which [they] would have been had the state not acted at all." *Pauluk v. Savage*, 836 F.3d 1117,

1124 (9th Cir. 2016) (quotations and modifications omitted). "The affirmative act must create an actual, particularized danger, and the ultimate injury to the plaintiffs must be foreseeable." *Hernandez v. City of San Jose*, ___ F.3d ___, 2018 WL 3597324, at *5 (9th Cir. 2018) (citations omitted). Examples include actively thwarting victims' attempts to flee possible danger,[4] forcing them into hazardous environments without adequate protection while preventing their return to safety,[5] or disrupting the administration of emergency or other relief services.[6] Each involves a specific act that either creates the danger or enhances it beyond the level preceding the act's occurrence. Omissions, by contrast, even those which enable the development or continuation of a danger that state intervention might have cured, are not affirmative acts. *See Doe v. Round Valley Unified Sch. Dist.*, 873 F. Supp. 2d 1124, 1133 (D. Ariz. 2012) (finding no affirmative act where state "affirmatively chooses not to intervene"). By focusing on coaches' awareness of, and subsequent failure to stop players' sexually abusive hazing practices, Plaintiffs treat the two as interchangeable. (*See* Resp. at 3–4 ("[T]hese Defendants knew something had already happened, and was going to happen again, but ignored the risks and allowed the minor Plaintiffs to be exposed to this unchecked, unsupervised environment wherein these Plaintiffs were sexually assaulted.").) Such omissions, however egregious, are not affirmative acts under the state-created danger exception. Defendants had no federal constitutional duty to protect Minor Plaintiffs, even from a known danger like that alleged here. The Court accordingly dismisses Plaintiffs' § 1983 claims.

### B.     Title IX Claim (Count III)

Title IX prohibits discrimination "on the basis of sex" by federally funded educational programs and activities. 20 U.S.C. § 1681(a). Neither party suggests the statute doesn't apply to student-on-student harassment. (Resp. at 9; Reply at 3.) It does.

---

[4] *See id.* (employing crowd control measures that actually increased dangers to political rally attendees).
[5] *See Munger v. City of Glasgow Police Dept.*, 227 F.3d 1082, 1087 (9th Cir. 2000) (ejecting intoxicated man from bar into subfreezing temperatures with minimal clothing and preventing him from using his truck or reentering the bar).
[6] *See Penilla v. City of Huntington Park*, 115 F.3d 707, 710 (9th Cir. 1997) (cancelling 9-1-1 call placed by neighbors reporting man displaying medical symptoms, bringing him into his house, and leaving him there to die).

1  *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 643 (1999). What Plaintiffs do contend
2  is that Title IX dispenses with the requirement that discrimination be "on the basis of
3  sex"—or rather, motivated by gender[7]—when it is based upon sexual harassment. (*See*
4  Resp. at 8.) Defendants maintain that pleading a gender-related reason for any harassment
5  remains essential to a Title IX claim, irrespective of the type of discrimination at issue.
6  (Reply at 3–4.) Defendants, while legally correct, are practically mistaken.

7         To prove their claim, Plaintiffs must show that (1) the District exercised
8  "substantial control over both the harasser[s] and the context in which the known
9  harassment occur[red]"; (2) the sexual harassment was "so severe, pervasive, and
10 objectively offensive that it can be said to deprive the victims of access to the educational
11 opportunities or benefits provided by the school"; (3) the District had "actual knowledge"
12 of the harassment; and (4) the District acted with "deliberate indifference" toward the
13 harassment. *Round Valley*, 873 F. Supp. 2d at 1136 (quoting *Davis*, 526 U.S. at 644–45,
14 650). Defendants do not challenge the sufficiency of Plaintiffs' pleadings as to the first,
15 third, or fourth elements. The sole issue is whether the second element requires showing
16 the harassment was gender-based, and if so, how it may be shown.

17        Because Title VII of the Civil Rights Act of 1964, like Title IX, prohibits
18 discrimination "because of . . . sex," the Court also considers Title VII case law in
19 determining what Title IX requires. 42 U.S.C. § 2000e–2(a)(1); *see Olmstead v. L.C. ex*
20 *rel. Zimring*, 527 U.S. 581, 616 n.1 (1999) ("This Court has also looked to its Title VII
21 interpretations of discrimination in illuminating Title IX[.]"). Neither body of law
22 suggests that a plaintiff need not prove that sexual harassment is attributable to the
23 plaintiff's gender. Quite the opposite. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523
24 U.S. 75, 79–80 (1998) (requiring Title VII plaintiff to show harassment attributable to
25 sex); *see also Nungesser v. Columbia Univ.*, 244 F. Supp. 3d 345, 362–63 (S.D.N.Y.
26 2017) ("In order to be considered gender-based harassment [under Title IX], the
27 harassing conduct must 'support an inference of discrimination on the basis of sex.'")

28 ---
[7] *See Round Valley*, 873 F. Supp. 2d at 1137 ("'Sex' here does not mean 'sexual activity,' but rather is synonymous with 'gender.'").

(quoting *Oncale*, 523 U.S. at 80). Defendants are correct: Plaintiffs must plead that the sexual harassment was gender-based. And they have.

Plaintiffs have alleged sufficient facts to reasonably support an inference of gender-motivated harassment. This is a same-sex harassment case involving sexually violent hazing by the victims' teammates. Discerning the impetus for such behavior "depends on a constellation of surrounding circumstances, expectations, and relationships including, but not limited to, the ages of the harasser and the victim and the number of individuals involved." *Davis*, 526 U.S. at 651 (citation and quotations omitted). Importantly, "harassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex." *Oncale*, 523 U.S. at 80. Some other "evidentiary route" may also suffice. *See id.* at 80–81. Beyond the three listed in *Oncale* (none applies here[8]), gender stereotyping provides a separate avenue for establishing a gender-based motive. *See Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, 874–75 (9th Cir. 2001). Specifically, harassment is "on the basis of sex" if its aim is the enforcement of "socially-constructed gender expectations." *See Schwenk v. Hartford*, 204 F.3d 1187, 1202 (9th Cir. 2000). One could reasonably infer nothing less from the acts alleged here.

Hazing new teammates is a common practice among high school sports teams. Though much of it is lamentable, not all hazing is necessarily actionable sex discrimination. Other possible motivations include "team hierarchy, seniority, or class position (e.g. seniors hazing freshmen)." *Doe v. Hamilton Cty. Bd. of Educ.*, No. 1:16-cv-373, 2018 WL 3751612, at *8 (E.D. Tenn. Aug. 6, 2018). The Supreme Court has cast mere "male-on-male horseplay" as "ordinary socializing" lying beyond the reach of Title IX. *See Oncale*, 523 U.S. at 81; *see also Davis*, 526 U.S. at 651–52 ("[S]tudents are still learning how to interact appropriately with their peers. It is thus understandable that, in the school setting, students often engage in insults, banter, teasing, shoving, pushing, and gender-specific conduct that is upsetting to the students subjected to it."). Several district

---

[8] *See* 523 U.S. at 80–81.

- 7 -

courts have nevertheless drawn the line at the use of sexual humiliation as a test of one's masculinity. *See, e.g.*, *Arredondo v. Estrada*, 120 F. Supp. 3d 637, 646 (S.D. Tex. 2015) ("[H]umiliation based on gender stereotyping meant to separate those who are deemed less manly from the rest of a crew is actionable."); *Theno v. Tonganoxie Unified Sch. Dist. No. 464*, 394 F. Supp. 2d 1299, 1307 (D. Kan. 2005) ("Instead of simply picking on him by using non-sexual terms such as 'geek,' 'weirdo,' or 'spaz,' they resorted to crude gestures, teasing, and name calling with sexual innuendos and undertones in an effort to debase and derogate his masculinity."). These decisions reflect an understanding that the sexually violent enforcement of gender expectations among males is no more permissible under Title IX than a male executive's sexual subordination of a female colleague under Title VII. *See id.*[9] This, too, is the Court's view.

The hazing alleged here isn't "mere run-of-the-mill horseplay, profane taunting, or casual obscenities" unquestionably devoid of a gender-based motivation. *See Theno*, 394 F. Supp. 2d at 975. Penetrating buttocks with highlighters, broom handles, and hands; pulling down pants and underwear; restraining players while simulating sex acts and exposing genitalia; butt-slapping and nipple-twisting—certainly the perpetration of such crude, sexually charged acts over the course of two school years, viewed in a light most favorable to Plaintiffs, may reasonably be construed as a concerted effort to weed out the insufficiently masculine. (*See* Am. Compl. ¶¶ 41(A)–(E).) *See Arredondo*, 120 F. Supp. 3d at 645.[10]

---

[9] *See also* Luke A. Boso, *Real Men*, 37 U. Haw. L. Rev. 107, 130 (2015) ("Social scientists who study gender, and masculinity more specifically, commonly find that men harass other men to prove or shore up their own masculinity. Harassment is a form of competition and serves as one way to demonstrate dominance; the harasser is coded as strong and therefore masculine, while the victim is marked as weak and therefore feminine.") (footnotes omitted).

[10] *See also* Kim Shayo Buchanan, *Our Prisons, Ourselves: Race, Gender and the Rule of Law*, 29 Yale L. & Pol'y Rev. 1, 38 ("In the outside world as in prison, one important way for men to establish their masculinity is to bond with other men through ritual forms of sexualized talk and touching. Crude sexual jokes, gay-baiting insults, homophobic threats, and aggressive sexualized touching (e.g., crass behaviors such as butt-slapping, ass-grabbing, nipple-twisting and ball-squeezing) are all relatively familiar and normative ways for boys and men to establish their heterosexuality by challenging that of other men. If the newbie is a real man, he can withstand such hazing, join the team, and dish it out in turn. Sexualized hazing is a way of making men, outside prison as well as inside.") (footnotes omitted).

1    Defendants certainly remain free to offer an alternative motivational theory for the
2    harassers' behavior. *Cf. Roe ex rel. Callahan v. Gustine Unified Sch. Dist.*, 678 F. Supp.
3    2d 1008, 1026–27 (E.D. Cal. 2009) ("Facts demonstrating that the victims may have been
4    targeted because of their class standing are capable of more than one inference, i.e., the
5    facts are relevant to show animus based on age *and* gender. The two are not mutually
6    exclusive."). But any such argument wouldn't support dismissal for failure to state a
7    claim under Rule 12(b)(6). *See Doe v. Brimfield Grade School*, 552 F. Supp. 2d 816,
8    824–25 (C.D. Ill. 2008) (refusing dismissal based on defendant's alternative
9    characterizations of harassment even if full record might eventually vindicate them);
10   *Thomas v. Town of Chelmsford*, 267 F. Supp. 3d 279, 308 (D. Mass. 2017) (same). This
11   context-driven, fact-intensive inquiry cannot be resolved on pleadings alone. The Court
12   offers no opinion on the ultimate merits of the case. Nor can it say that Plaintiffs as a
13   matter of law will not be able to show that Minor Plaintiffs were harassed "on the basis of
14   sex." *See* 20 U.S.C. § 1681(a).

### III. CONCLUSION

The constitutional right of bodily security is a well-established one. Even so, though the State's power to actively infringe upon that interest is duly limited, its obligation to protect against private infringement of the same is similarly circumscribed. Omissions alone, then, are insufficient to establish its violation. Plaintiffs' § 1983 claims are accordingly dismissed. The State's obligations under Title IX, conversely, are not so lax. While actionable harassment must be based on sex, the acts alleged herein, if proven, undoubtedly support an inference that socially-constructed gender expectations played a role. Dismissal of Plaintiffs' Title IX claim is denied.

/ / /
/ / /
/ / /
/ / /
/ / /

1  **IT IS ORDERED** granting in part and denying in part Defendants' Motion to
2  Dismiss (Doc. 40).
3
4        Dated this 21st day of August, 2018.
5
6
7
8                              _____
                                    Susan R. Bolton
9                              United States District Judge